1
2
3
4
5
6
7

8       UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA

10      SAN JOSE DIVISION

11  GREGORY NICHOLAS STESHENKO,        )   Case No.: 13-CV-04948-LHK
                                       )
12                      Plaintiff,     )   ORDER GRANTING MOTION TO
            v.                         )   DISMISS
13                                     )
    GERALDINE M. ALBEE, et al.,        )
14                                     )
                        Defendants.    )
15  _____)

16          Plaintiff Gregory Nicholas Steshenko ("Plaintiff") brings this action for age discrimination

17  based on not being admitted to a graduate program at San Francisco State University.  Defendants

18  Geraldine Albee and the Board of Trustees of the California State University (collectively,

19  "Defendants") move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

20  ("Rule") 12(b)(6).  ECF No. 15 ("Mot.").  The Court held a hearing on this motion on May 15,

21  2014.  Having considered the parties' briefs and arguments, the relevant law, and the record in this

22  case, the Court hereby GRANTS Defendants' Motion to Dismiss.

23  **I.       BACKGROUND**

24          Plaintiff is a 52-year-old unemployed electrical engineer seeking to re-enter the job market

25  through a professional re-training.  ECF No. 1 ("Compl.") at ¶ 10.  In addition to a Master of

26  Science degree in Electrical Engineering, Plaintiff earned a Bachelor of Science degree in

27  Biochemistry and Molecular Biology from the University of California, Santa Cruz.  *See id.* at ¶

28  10.

1

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

On October 22, 2012, Plaintiff applied to the Clinical Laboratory Scientist ("CLS") Internship Program at San Francisco State University for enrollment in the Fall Semester of 2013. Compl. ¶ 12. The CLS Internship Program is a one-year academic program combining theoretical training with an internship at a participating clinical laboratory. *Id.* at ¶ 11. On March 19, 2013, Plaintiff was notified that he would not be invited for an admission interview. *Id.* at ¶ 12. In response to Plaintiff's inquiries, CLS Director Defendant Albee stated that the reason for the denial was that Plaintiff's transcript—with the grade for one of the prerequisite classes—arrived after the deadline. *Id.* Albee also stated that the participating clinical laboratories, not San Francisco State University, made admission decisions for the program. *Id.*

On June 12, 2013, Plaintiff reapplied to the CLS Internship Program for enrollment in the Spring Semester of 2014. Compl. ¶ 13. On August 28, 2013, Albee notified Plaintiff that Plaintiff "did not meet the criteria for selection into the CLS program." *Id.* Albee refused to clarify what "criteria" Plaintiff did not meet, and ceased communications with Plaintiff. *Id.* According to Plaintiff, much younger applicants, in their 20s, with much more inferior academic credentials and work experience, were invited for interviews and subsequently admitted to the program. *Id.*

Plaintiff alleges that the CLS Internship Program and the participating clinical laboratories "heavily discriminate on the grounds of age." Compl. at ¶ 14. Plaintiff alleges: "No persons of the protected age have ever been admitted to the [CLS Program]. The age discrimination is rampant." *Id.* Plaintiff further alleges that Plaintiff's age was the "only derogatory factor" that "prevented [Plaintiff's] admission to the CLS Internship Program, denied Plaintiff a professional license, and ultimately denied Plaintiff a professional job. *Id.*

Plaintiff alleges that he has exhausted his administrative remedies with the USDOE. Compl. ¶ 7. Plaintiff also alleges that he filed a timely administrative claim with the California State University Chancellor's Office. Compl. ¶ 8. However, Defendants chose not to respond to Plaintiff's claim. *Id.*

On October 24, 2013, Plaintiff filed a Complaint against Defendants. ECF No. 1. On March 26, 2014, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). ECF No. 14.

2

That same day, Defendants amended the Motion to Dismiss.  ECF No. 15 ("Mot.").[1]  After the Court granted Plaintiff's motion to extend time to file a response to the Motion to Dismiss, on April 17, 2014, Plaintiff filed an Opposition.  ECF No. 20.  On April 23, 2014, Defendants filed a Reply.  ECF No. 21.  The Court held a hearing on May 15, 2014.  Plaintiff filed a supplemental letter brief on May 16, 2014.  ECF No. 23.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Moreover, pro se pleadings are to be construed liberally. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[I]n general, courts must construe pro se pleadings liberally.").

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

---

[1] The amended Motion to Dismiss, ECF No. 15, is the operative motion.  The first Motion to Dismiss, ECF No. 14, was terminated on March 27, 2014.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

2    the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

3    curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

4    "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

5    dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); accord *Iqbal*, 556 U.S. at 678.

6    Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

7    [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

8    1997) (internal quotation marks omitted).

9         **B.    Leave to Amend**

10        If the Court determines that the complaint should be dismissed, it must then decide whether

11   to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend

12   "should be freely granted when justice so requires," bearing in mind that "the underlying purpose

13   of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

14   technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation

15   marks omitted). When dismissing a complaint for failure to state a claim, "a district court should

16   grant leave to amend even if no request to amend the pleading was made, unless it determines that

17   the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (quoting *Doe

18   v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Furthermore, the Court "has a duty to ensure

19   that pro se litigants do not lose their right to a hearing on the merits of their claim due to ignorance

20   of technical procedural requirements." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th

21   Cir. 1990).  Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue

22   delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by

23   amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of

24   amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010)

25   (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

26   **III.    DISCUSSION**

27        Plaintiff's Complaint asserts seven causes of action against Defendants, but groups them

28   into the following four causes of action: (1) age discrimination in violation of the Age

4

United States District Court
For the Northern District of California

1    Discrimination Act of 1975 ("ADA"), Age Discrimination in Employment Act of 1967 ("ADEA"),

2    and California Fair Employment and Housing Act ("FEHA"); (2) violation of due process and

3    equal protection rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 ("Section

4    1983") and §52.1 of the California Civil Code ("Bane Act"); (3) conspiracy to interfere with civil

5    rights pursuant to 42 U.S.C. § 1985(3) ("Section 1985(3)"); and (4) intentional infliction of

6    emotional distress ("IIED").  *See* Compl. at 5-7.

7           Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) on the ground that

8    Plaintiff's Complaint fails to state any claims upon which relief can be granted.  *See* Mot. at 3-12.

9    Specifically, Defendants contend that: (1) the Eleventh Amendment to the United States

10   Constitution is a complete bar to all of Plaintiff's claims against Defendant Board of Trustees of

11   the California State University, Mot. at 3-8;[2] and (2) each of Plaintiff's claims against Defendant

12   Albee fail because (a) Albee cannot be individually liable for those claims, and (b) Plaintiff has not

13   pled sufficient facts to constitute a claim.  Mot. at 8-13.  For the reasons set forth below, the Court

14   GRANTS Defendants' Motion to Dismiss Plaintiff's Complaint.

15   **A.      Defendant Board of Trustees of the California State University**

16          Defendants argue that the Eleventh Amendment to the United States Constitution is a

17   complete bar to all claims against Defendant Board of Trustees of the California State University

18   ("Board of Trustees").  Mot. at 3.

19          The Eleventh Amendment provides:

20          The Judicial power of the United States shall not be construed to extend to any suit in law
            or equity, commenced or prosecuted against one of the United States by Citizens of another
21          State, or by Citizens or Subjects of any Foreign State.

22   _____

23   [2] Ninth Circuit cases have held that dismissal based on Eleventh Amendment immunity should be
     analyzed under Rule 12(b)(6) and not as a jurisdictional issue under Rule 12(b)(1).  *See Elwood v.*
24   *Drescher*, 456 F.3d 943, 949 (9th Cir. 2006) (stating that "dismissal based on Eleventh
     Amendment immunity is not a dismissal for lack of subject matter jurisdiction, but instead rests on
25   an affirmative defense.") (quotation marks and citation omitted); *Tritchler v. Cnty. of Lake*, 358
     F.3d 1150, 1153-54 (9th Cir. 2004) (stating that "Eleventh Amendment immunity does not
26   implicate a federal court's subject matter jurisdiction in any ordinary sense and that it should be
     treated as an affirmative defense.") (internal quotation marks omitted); *Miles v. Cal.*, 320 F.3d 986,
27   988-89 (9th Cir. 2003) (ruling that "dismissal based on Eleventh Amendment immunity is not a
     dismissal for lack of subject matter jurisdiction") (citing *Hill v. Blind Indus. and Servs. of Md.*, 179
28   F.3d 754, 762 (9th Cir. 1999) (concluding that the Eleventh Amendment is not a jurisdictional bar
     because it is a defense that can be waived by the state)).

5

U.S. Const. Amend. XI.

Essentially, the Eleventh Amendment erects a general bar against federal lawsuits brought against a state. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). "The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (citation omitted). The Board of Trustees is an arm of the state of California and thus the Board of Trustees may invoke the Eleventh Amendment immunity. *Stanley v. Trs. of the Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (noting that the Ninth Circuit has previously held that the Trustees of the California State University "are an arm of the state that can properly lay claim to sovereign immunity") (citing *Jackson v. Hayakawa*, 682 F.2d 1344, 1350-51 (9th Cir. 1982)).

State immunity under the Eleventh Amendment is not absolute, however, as there are three exceptions to the rule: (1) Congress may abrogate that immunity pursuant to its lawmaking powers conferred by the United States Constitution, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000); (2) the state may waive its Eleventh Amendment immunity by consenting to suit, *College Sav. Bank Florida v. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); and (3) under the *Ex parte Young* doctrine, immunity does not apply when the plaintiff chooses to sue a state official in his or her official capacity for prospective injunctive relief, *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996).

Here, Plaintiff attempts to avoid the bar of the Eleventh Amendment by invoking the *Ex parte Young* doctrine exception against the Board of Trustees. Plaintiff clarifies that he is only pleading a claim of injunctive relief against the Board of Trustees as allowed by the *Ex parte Young* doctrine. Compl. ¶ 4 (alleging that "The Eleventh Amendment permits citizens of any state to seek an injunction or other form of equitable relief against the state in federal court to 'end a continuing violation of federal law'" and citing *Ex parte Young*, 209 U.S. 123 (1908)); Opp'n at 5 ("Plaintiff is suing the Trustees of the California State University for injunctive relief only."). For the reasons set forth below, the *Ex parte Young* doctrine exception does not apply to Plaintiff's claims against the Board of Trustees, and the Court GRANTS Defendants' Motion to Dismiss all of Plaintiff's claims against the Board of Trustees.

6

United States District Court
For the Northern District of California

### 1.   *Ex parte Young* doctrine

While the Eleventh Amendment erects a general bar against federal lawsuits brought against a state, the Eleventh Amendment does not bar actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law. *See Ex parte Young*, 209 U.S. at 155-56.  The exception to Eleventh Amendment immunity recognized in *Ex parte Young* "is based in part on the premise that sovereign immunity bars relief against States and their officers in both state and federal courts, and that certain suits for declaratory or injunctive relief against state officers must therefore be permitted if the Constitution is to remain the supreme law of the land." *Alden v. Maine*, 527 U.S. 706, 747 (1999).

As an initial matter, the *Ex parte Young* exception applies only where the state officials are allegedly violating federal law; it does not reach suits seeking relief against state officials for violations of state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (stating that "when a plaintiff alleges that a state official has violated state law," "the entire basis for the doctrine . . . disappears").  Accordingly, the *Ex parte Young* doctrine does not exempt from Eleventh Amendment immunity Plaintiff's state law claims—FEHA claim, Bane Act claim, and IIED claim—against the Board of Trustees.  Thus, the Eleventh Amendment bars Plaintiff's state law claims against the Board of Trustees.

With respect to Plaintiff's federal law claims, Defendants argue that the *Ex parte Young* doctrine is inapplicable when a claim is asserted against a state or state agency, as opposed to against a state official.  Mot. at 7.  According to Defendants, the Board of Trustees "is the State and is not a state official" and thus the *Ex parte Young* doctrine does not apply.  *See id.* at 8.

In *Ex parte Young*, the Supreme Court recognized that a "suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 103.  Courts have held that a board of trustees is not a state official acting in its official capacity and thus the *Ex parte Young* doctrine does not apply to a board of trustees. *See, e.g.*, *Eubank v. Leslie*, 210 Fed. Appx. 837, 844-45 (11th Cir. 2006) (stating "The University of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity . . . [h]ence, the exception to 11th Amendment immunity set out in Ex parte Young does not apply to claims against

7

United States District Court
For the Northern District of California

1   it[.]").  In the instant case, Plaintiff has named the Board of Trustees as a defendant.  Thus, because

2   the Board of Trustees is not a state official acting in its official capacity, the *Ex parte Young*

3   doctrine does not apply and the Eleventh Amendment bar remains in effect.

4       Plaintiff, however, argues that "the question of whether or not the board members are

5   public officials is irrelevant" because "[t]he California State University itself requires the legal

6   claims against the University designate the Board of Trustees as the defendant."  Opp'n at 9.

7   However, Plaintiff cites no authority for that proposition.  Plaintiff also cites a First Circuit case for

8   the proposition that "[a] suit against a public official in his official capacity is a suit against the

9   government entity itself."  Opp'n at 9 (citing *Suprenant v. Rivas*, 424 F.3d 5, 19 (1st Cir. 2005)).

10  However, the *Suprenant* court did not make that statement in the context of the *Ex parte Young*

11  doctrine or the Eleventh Amendment.  Rather, that statement was made in the context of

12  unconstitutional conditions of confinement under the Eighth Amendment and Fourteenth

13  Amendment.  Thus, *Suprenant* is inapposite.

14      Because the *Ex parte Young* doctrine does not apply to state law claims and federal claims

15  against a board of trustees, all of Plaintiff's claims against the Board of Trustees remain barred by

16  the Eleventh Amendment.  Accordingly, all of Plaintiff's claims against the Board of Trustees are

17  dismissed.  Plaintiff, however, may invoke the other exceptions to Eleventh Amendment immunity.

18  Thus, the dismissal is without prejudice.

19      **B.      Defendant Albee**

20      Plaintiff asserts federal and state law claims against Defendant Albee in her individual

21  capacity for monetary and equitable relief.  Compl. ¶ 5.  For the reasons set forth below, the Court

22  concludes that Plaintiff fails to state a claim for violations of federal law against Albee.  Having

23  reached this conclusion, the Court declines to exercise supplemental jurisdiction over Plaintiff's

24  remaining state law claims.  Accordingly, the Court GRANTS Defendants' motion to dismiss

25  Plaintiff's claims as to Albee.

26      **1.      Age Discrimination Act of 1975 ("ADA") Claim**

27      Plaintiff alleges that Albee violated the Age Discrimination Act of 1975 ("ADA") by

28  denying Plaintiff admission to the CLS Internship Program because of Plaintiff's age.  Compl. ¶¶

8

15-16.  Defendants, however, argue that the ADA does not authorize recovery of monetary

damages and that Albee is not a proper defendant in ADA actions.  Mot. at 9.

Under the ADA, "no person in the United States shall, on the basis of age, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under, any

program or activity receiving Federal financial assistance."  42 U.S.C. § 6102.  The ADA,

however, does not authorize the recovery of monetary damages as to individual defendants.

*Rasmussen v. State DMV*, No. CV 08-1604-FMC (PLA), 2008 U.S. Dist. LEXIS 120895, at *14-15

n.3 (C.D. Cal. Nov. 25, 2008) (citing *Montalvo-Padilla v. University of Puerto Rico*, 498 F. Supp.

2d 464, 468 (D.P.R. 2007) (noting that the private cause of action created by the Age

Discrimination Act "is limited to injunctive relief and the recovery of attorney's fees") and *Tyrrell

v. City of Scranton*, 134 F. Supp. 2d 373, 383 (M.D. Pa. 2001) ("the [Act] cannot support an action

for damages")).  Thus, Plaintiff may not seek monetary damages from individual defendants such

as Albee under the ADA.

Plaintiff argues that the cases above are distinguishable because "the circumstances of

[those] cases are very different (employment discrimination v. educational discrimination that

precludes employment)[.]"  Opp'n at 10.  However, Plaintiff does not explain how the cases are

"very different" and how the purported factual distinction changes the *Rasmussen*, *Montalvo-

Padilla*, and *Tyrrell* courts' holdings.  Indeed, Plaintiff concedes in his Opposition that "the net

effect of both is the same: denial of employment."  *Id*. at 11.  Plaintiff also argues that it would be

"highly illogical" for the ADEA to authorize damages while the ADA does not.  *See id*. at 10.

Plaintiff, however, does not offer any authority to support his argument.  Absent any authority

otherwise, the Court will follow the courts in *Rasmussen*, *Montalvo-Padilla*, and *Tyrrell* and hold

that the ADA does not authorize Plaintiff to recover money damages against Albee.

Defendants also argue that the ADA's enforcement provision, Section 6104(e), "make[s]

clear that the only proper defendants are the 'program or activity receiving Federal financial

assistance.'"  Mot. at 9.  While the Ninth Circuit has not addressed whether an individual defendant

can be held liable under the ADA for attorneys' fees or injunctive relief, a review of the relevant

provisions of the ADA demonstrates that Plaintiff cannot maintain an ADA claim against Albee.

9

As set forth above, the ADA prohibits a "program or activity" receiving federal financial assistance from discriminating against a person because of that person's age.  42 U.S.C. § 6102.  "Program or activity" is defined to include a college, university, or other postsecondary institution, or a public system of higher education.  *See* 42 U.S.C. § 6107(4)(B)(i).  Because school employees are not included in that definition, and because school employees do not "receive federal financial assistance," Albee is not a proper defendant under the ADA.

Moreover, courts have held that claims may not be asserted against school employees in their individual capacities under statutes with similar language directing similar prohibitions to a "public entity" and "any program or activity receiving Federal financial assistance."  For example, under the Americans with Disabilities Act, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  School officials, however, may not be held liable under the Americans with Disabilities Act because they are neither a "public entity" nor a "federal recipient."  *Stassart v. Lakeside Joint Sch. Dist.*, No. 09-1131 JF, 2009 U.S. Dist. LEXIS 104971, at *39 (N.D. Cal. Sept. 29, 2009) (dismissing plaintiff's claim against the school superintendent, in his individual capacity, because the school superintendent is neither a "public entity" nor a "federal recipient.").  Plaintiff does not cite to any contrary authority to demonstrate that a school official such as Albee may be liable in her individual capacity under the ADA.  Indeed, Plaintiff neglects to address this argument in his Opposition.

Accordingly, Plaintiff may not sue Albee individually under the ADA.  Because Plaintiff cannot allege additional facts to cure this deficiency, the Court dismisses Plaintiff's ADA claim against Albee with prejudice.

### 2.    Age Discrimination in Employment Act of 1967 ("ADEA") Claim

Plaintiff also alleges that Albee violated the ADEA by denying Plaintiff admission to the CLS Internship Program because of Plaintiff's age.  Compl. ¶¶ 15-16.  Plaintiff alleges that "the program has dual characteristics of an educational setting and temporary work."  *Id.* at ¶ 16. Plaintiff explains that "[e]ven if the Court finds that the program is either purely educational or

10

United States District Court
For the Northern District of California

1    purely constituted work, the age discrimination was unlawful under [either the ADA or ADEA]."

2    *Id.* Defendants, however, argue that individual defendants have no liability under the ADEA

3    statutory scheme, and thus claims against Albee in her individual capacity may be properly

4    dismissed for failure to state a claim. Mot. at 8-9.

5            The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any

6    individual or otherwise discriminate against any individual . . . because of such individual's age."

7    29 U.S.C. § 623(a)(1). In *Miller v. Maxwell, Int'l*, the Ninth Circuit held that individual defendants

8    cannot be held liable for damages under the ADEA. 991 F.2d 583, 587-88 (9th Cir. 1993). The

9    Ninth Circuit reasoned that the statutory scheme itself indicated that Congress did not intend to

10   impose individual liability on employees. *Id.* at 587. "ADEA limits liability to employers with

11   twenty or more employees, 29 U.S.C. § 630(b), in part because Congress did not want to burden

12   small entities with the costs associated with litigating discrimination claims. If Congress decided

13   to protect small entities with limited resources from liability, it is inconceivable that Congress

14   intended to allow civil liability to run against individual employees." *Id.* Here, Defendant Albee is

15   not an employer; she is an individual employee of San Francisco State University. Compl. ¶ 3.

16   Thus, Albee cannot be held liable under the ADEA.

17           Plaintiff appears to contend that *Miller* was incorrectly decided and, in support, cites a 1995

18   law review article, which criticizes the holding in *Miller*. Opp'n at 10, Ex. C (Employment

19   Discrimination-Miller v. Maxwell, International, Inc: Individual Liability for Supervisory

20   Employees Under Title VII and ADEA, 17 W. New Eng. L. Rev., 143 (1995)). However, Ninth

21   Circuit case law—not law review articles—bind this Court.

22           Plaintiff also cites to *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986), for the

23   proposition that individual employees are liable under the ADEA. Opp'n at 8. However, the *Jones*

24   court did not address individual liability under the ADEA. Rather, the *Jones* court emphasized that

25   individuals may be liable for violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of

26   1964. 789 F.2d at 1231 (stating that "the law is clear that individuals may be held liable for

27   violations of § 1981 . . . and as 'agents' of an employer under Title VII"). Accordingly, Plaintiff's

28   reliance on *Jones* is misplaced. Therefore, the Court will follow *Miller*.

11

Accordingly, Albee cannot be held individually liable under the ADEA, and Plaintiff's ADEA claim against Albee is dismissed. Because Plaintiff cannot allege any additional facts that would cure the deficiency of Plaintiff's ADEA claim as to Albee, the Court dismisses with prejudice.

### 3.    42 U.S.C. § 1983 ("Section 1983") Claim (Denial of Equal Protection and Due Process)

Plaintiff alleges that Albee violated Section 1983 by "violating Plaintiff's rights to equal protection of the laws and to due process of law under the Fourteenth Amendment" by denying Plaintiff "professional re-training" and "access to employment" because of Plaintiff's age. Compl. ¶¶ 17-18. Defendants argue that Plaintiff's ADA and ADEA claims foreclose Plaintiff's Section 1983 claim because the ADA and ADEA provide the exclusive remedies for claims of age discrimination. *See* Mot. at 10-11.

"Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citing *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 978 (9th Cir.2004) (internal quotation marks omitted)). The statute's purpose "is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id*. (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).

An alleged violation of federal law may not be vindicated under Section 1983 where "Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002) (citations omitted). "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex Co. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981)). When Congress has created so many specific statutory remedies, "[i]t is hard to believe that Congress intended to preserve the § 1983 right of action." *Id*. Thus, "the existence of these express remedies demonstrates not only that Congress intended to foreclose

Case No.: 13-CV-04948-LHK
ORDER GRANTING MOTION TO DISMISS

1    implied private actions but also that it intended to supplant any remedy that otherwise would be

2    available under § 1983." *Id.* at 21. "The provision of an express, private means of redress in the

3    statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive

4    remedy under § 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 121 (2005). "To

5    preclude enforcement under section 1983, the Act's remedial scheme must be so comprehensive as

6    to leave no room for additional private remedies." *Buckley v. City of Redding*, 66 F.3d 188, 193

7    (9th Cir. 1995).

8           In *Ahlmeyer v. Nev. Sys. of Higher Educ.*, the Ninth Circuit found that the ADEA "provides

9    a comprehensive remedial scheme." 555 F.3d 1051, 1060 (9th Cir. 2009). Thus, the Ninth Circuit

10   held that "the ADEA precludes the assertion of age discrimination in employment claims, even

11   those seeking to vindicate constitutional rights, under § 1983." *Id.* at 1057. Specifically, the Ninth

12   Circuit found the following ADEA remedial scheme comprehensive:

13              A prerequisite to the bringing of a private action is that the Equal Employment
               Opportunity Commission (EEOC) must be given sixty days notice. 29 U.S.C. §
14             626(d). This period is designed to give the EEOC time to mediate the grievance "by
               informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(b).
15             The right to commence a private action, it should be noted, terminates upon the
               filing of an action by the EEOC. 29 U.S.C. § 626(c). Finally, notification to the
16             EEOC must be given within 180 days after the alleged unlawful actions took place,
               unless the party is also seeking state relief. 29 U.S.C. § 626(d)(1).
17

18   *Id.* at 1056 n.4 (citation omitted). Thus, Plaintiff's Section 1983 claim alleging age discrimination

19   in employment in violation of the Fourteenth Amendment is foreclosed. The Court dismisses

20   Plaintiff's Section 1983 claim based on age discrimination in employment with prejudice because

21   any amendment would be futile.

22          The Court next addresses Plaintiff's Section 1983 claim alleging age discrimination by a

23   program or activity receiving federal financial assistance in violation of the Fourteenth

24   Amendment. Defendants note that there are no known cases—and the Court has not found any—

25   that address whether the ADA's remedial scheme is sufficiently comprehensive to preclude Section

26   1983 claims. However, in determining whether the ADA created a private cause of action against a

27   federal agency or its employees for failure to remedy an alleged violation of the ADA, the Third

28   Circuit found that the ADA contains a comprehensive remedial scheme. *See Sindram v. Fox*, 374

                                                    13

Fed. Appx. 302, 305 (3d. Cir. 2010) ("Congress also created a comprehensive remedial scheme that does not include a cause of action against a federal agency or its employees.").  To determine whether the ADEA's remedial scheme precludes Section 1983 actions, the Ninth Circuit in *Ahlmeyer* stated that "courts must analyze the comprehensiveness of a statute" and the statute's "corresponding preclusion of other remedies" to determine whether the statute should be read as precluding Section 1983 actions.  555 F.3d at 1060.

The ADA provides the following remedial scheme.  Under Section 6102, "no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. §§ 6102.  Funding agencies have the authority to promulgate regulations to carry out the provisions of Section 6102 and to provide "appropriate investigative, conciliation, and enforcement procedures."   42 U.S.C. §§ 6103(a)(1)(4).  The agency can "seek to achieve compliance" with its regulations "by terminating, or refusing to grant or to continue, assistance under the program or activity."  42 U.S.C. § 6104(a)(1).

In addition to agency oversight and enforcement, the ADA also provides beneficiaries with an administrative remedy and judicial remedy.  Beneficiaries who believe a recipient is violating Section 6102 can file an administrative complaint with the relevant agency.  42 U.S.C. § 6104(f). If, after 180 days, the agency either takes no action or finds in favor of the recipient, the beneficiary can seek to "enjoin a violation of [the ADA] by any program or activity receiving Federal financial assistance." 42 U.S.C. § 6104(e)(1),(f).  Notably, the Section 6104(c) private cause of action allows a court to enjoin a violation of Section 6102.  The above provisions expressly provide for a method of enforcing the rights created by the ADA; suggesting that Congress intended to preclude other methods of enforcement.  *Alexander v. Sandoval*, 532 U.S. 275, 290 (U.S. 2001) (stating that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.").

Based on the U.S. Supreme Court's decision in *Middlesex* and the Ninth Circuit's decision in *Ahlmeyer*, the Court finds that the ADA's remedial scheme is sufficiently comprehensive to foreclose Section 1983 claims alleging age discrimination by a program or activity receiving

14

federal financial assistance in violation of the Fourteenth Amendment.  This finding is consistent

with the Ninth Circuit's recent decision in *Okwu v. McKim*, 682 F.3d 841, 844-46 (9th Cir. 2012),

which found that the remedial scheme of the Americans with Disabilities Act was sufficiently

comprehensive to foreclose Section 1983 claims based on disability discrimination.  Accordingly,

Plaintiff's Section 1983 claim alleging age discrimination by a program or activity receiving

federal financial assistance in violation of the Fourteenth Amendment is dismissed with prejudice

because amendment would be futile.

#### 4.        Section 1985(3) Claim

Plaintiff alleges that Albee conspired to interfere with Plaintiff's civil rights pursuant to 42

U.S.C. § 1985(3) ("Section 1985(3)").  Compl. ¶¶ 19-20.  Defendants argue that this claim should

be dismissed because Plaintiff has not pled specific facts from which a conspiracy can be plausibly

inferred under Section 1985(3).  Mot. at 11-12.

Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or

indirectly, any person or class of persons of the equal protection of the laws[.]"  *See* 42 U.S.C. §

1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971).  A claim for violation of Section

1985(3) requires the existence of a conspiracy and an act in furtherance of the conspiracy.  *Holgate

v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529,

1536 (9th Cir. 1992)).  A mere allegation of conspiracy is insufficient to state a claim.  *Id.* at 676-

77.  Allegations that identify "the period of the conspiracy, the object of the conspiracy, and certain

other actions of the alleged conspirators taken to achieve that purpose," *Marchese v. Umstead*, 110

F. Supp. 2d 361, 371 (E.D. Pa. 2000), and allegations that identify "which defendants conspired,

how they conspired and how the conspiracy led to a deprivation of . . . constitutional rights,"

*Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997), have been held to be sufficiently

particular to properly allege a conspiracy.

Here, Plaintiff merely makes a conclusory allegation that "Defendants conspired to violate

[Plaintiff's] civil right to be free from the age related discrimination, and succeeded in injuring

Plaintiff through denial of professional re-training and employment opportunities."  Compl. ¶ 20.

However, a mere allegation of conspiracy is insufficient to state a claim.  *Holgate Id*. 425 F.3d at

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   676-77.  Plaintiff also pleads no facts to support his conspiracy claim.  Plaintiff does not allege: (1)

2   a specific agreement between Albee and another person; (2) the scope of the conspiracy; (3)

3   Albee's role in the conspiracy; (4) when and how the conspiracy operated; and (5) what action was

4   taken in furtherance of that conspiracy.  Because such facts were not alleged, Plaintiff's conspiracy

5   allegation is insufficient.  *See Lacey v. Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) (conspiracy

6   allegations insufficient when plaintiff did not plead the scope of the conspiracy, what role the

7   defendant had, or when and how the conspiracy operated).

8          Because Plaintiff fails to allege any facts from which a conspiracy can be plausibly inferred

9   under Section 1985(3), Plaintiff's Section 1985(3) claim is dismissed as to Albee.  Plaintiff,

10  however, may allege additional facts to cure the deficiencies identified above.  As such, the Court

11  dismisses with leave to amend.

12              **5.    Plaintiff's Remaining State Law Claims (FEHA Claim, Bane Act Claim,
                       and IIED Claim)**

13

14         Because the parties in this case are non-diverse, *see* Compl. ¶¶ 2-3, the now-dismissed

15  federal law claims provide the sole bases for federal subject matter jurisdiction in this case.  While

16  a federal court may exercise supplemental jurisdiction over state law claims "that are so related to

17  claims in the action within [the court's] original jurisdiction that they form part of the same case or

18  controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may

19  decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has

20  original jurisdiction," 28 U.S.C. § 1367(c)(3); *see also Albingia Versicherungs A.G. v. Schenker*

21  *Int'l, Inc.,* 344 F.3d 931, 937-38 (9th Cir. 2003) (Section 1367(c) grants federal courts the

22  discretion to dismiss state-law claims when all federal claims have been dismissed).  A court, in

23  considering whether to retain supplemental jurisdiction, should consider factors such as "economy,

24  convenience, fairness, and comity," *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en

25  banc) (internal quotation marks omitted).  However, "in the usual case in which all federal-law

26  claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

27  jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court,*

28

                                                    16

24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by Cal.*
*Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

      Here, the balance of factors weighs in favor of dismissing Plaintiff's remaining state law claims.  This case has yet to proceed beyond the pleadings, and thus few judicial resources are wasted by dismissing the case at this stage.  Further, dismissal promotes comity by allowing the California courts to interpret state law concerning the state law claims in the first instance.  Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claims—FEHA claim, Bane Act claims, and IIED claim—in Plaintiff's Complaint.  *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline to exercise supplemental jurisdiction over related state-law claims under subsection (c)(3) once it has dismissed all claims over which it has original jurisdiction.)

      Accordingly, because the Court declines to exercise supplemental jurisdiction as to Plaintiff's state law claims, Plaintiff's state law claims against Albee are dismissed.

## IV.    CONCLUSION

      For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss, as follows:

      (1) The Court GRANTS Defendants' motion to dismiss all of Plaintiff's claims against the Board of Trustees with leave to amend;

      (2) The Court GRANTS Defendants' motion to dismiss Plaintiff's ADA claim against Albee with prejudice;

      (3) The Court GRANTS Defendants' motion to dismiss Plaintiff's ADEA claim against Albee with prejudice;

      (4) The Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1983 claim based on due process and equal protection violations against Albee with prejudice;

      (6) The Court GRANTS Defendants' motion to dismiss Plaintiff's Section 1985(3) claim against Albee with leave to amend; and

      (7) The Court GRANTS Defendants' motion to dismiss Plaintiff's state law claims—FEHA claim, Bane Act claim, and IIED claim.

17

1    Should Plaintiff elect to file an amended complaint addressing the deficiencies discussed

2  herein, Plaintiff shall do so within 14 days of the date of this Order.  Plaintiff may not add new

3  claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of

4  Civil Procedure 15.  Plaintiff's failure to meet the 14-day deadline to file an amended complaint or

5  failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice.

6  **IT IS SO ORDERED.**

7

8  Dated: May 20, 2014

   LUCY H. KOH
9  United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

18